Herbert *v.* Smith.

---

Ella S. Herbert and another *v.* Susan P. Smith and others.

(General Term, First Department, November, 1872.)

A misunderstanding or mistake, in regard to matters of agreement, upon argument at Special Term is not a subject for review on appeal.

Where the fee simple, and every equitable title to lands, was vested in the parties to an action for its partition,—*Held,* that the action would lie.

The vendee of lands under a contract for purchase at a large price, died, after payment of a portion of the purchase-money, leaving a still greater balance unpaid; his administrators advanced their own funds, partly, with those of the intestate, and took a deed to themselves individually, which they claimed to hold only as security for their advances. *Held,* that an action for partition, between all the legal and equitable owners of the lands, could be maintained.

Herbert *v.* Smith.

And it seems equity would entertain an action upon a complaint setting forth the facts, and to which all interested were parties and decree a sale, in the nature of a partition, and a division of the proceeds.

An omission, of proof of the sending by mail a copy of the summons and complaint, on service by publication, may be supplied by order directing the filing of such proof *nunc pro'tunc*, made after decree.

The Code requires publication of a summons to be made continuously in each paper, but not concurrently.

The service is not complete until forty-two days after the first insertion in the paper last making publication..

Questions in a partition suit, respecting the suitableness of the guardians *ad litem* appointed by the court, their attention to the interests of the infants, the money advanced by administrators on behalf of the infants, the amount of the estate, &c., do not affect the jurisdiction of the court or regularity of the sale, and are not grounds upon which purchasers of the lands can be relieved from their purchase.

Where the referee, to make a partition sale, has not followed the decree in respect to the terms of sale, the court may, upon proof that the deviation was not prejudicial to the infants, but desirable for their interests, direct a modification of the decree *nunc pro tunc*.

A question, of such deviation from the decree, being as to regularity of practice only, and not one on which the court would have intervened after the sale, is not one with which the purchaser has any concern.

Where the referee adjourns the sale in partition, after sales of part of the premises, to a particular time, and upon confirmation of the sales made the court directs the sale of the remaining premises to stand over to a future time, the adjournment of the referee is nullified, and a sale at a later day than the day appointed by adjournment made upon publication of notice for six weeks as directed by the decree, is regular.

An allegation by the purchaser, that mortgages exist upon the property purchased which the referee was not prepared to satisfy at the time for the delivery of the deed, is met by proof that the amount to be paid by the purchasers was sufficient to extinguish the mortgages, and that the holders were at hand to receive the money and satisfy their liens.

A suggestion that title is defective because it came through a grantee who had purchased in his own right, forty years since, while he stood in the relation of trustee of the property, where no evidence is offered to show that the trustee did not account to his *cestui que trust*, the property having been often since transferred by his and subsequent grantees, is not material.

THIS was an appeal from an order refusing to relieve a purchaser at partition sale from his purchase. The facts are stated in the opinion.

Present—BRADY and LEONARD, JJ.

Herbert *v.* Smith.

LEONARD, J.   This is an appeal from an order denying a motion, on the part of Amos R. Eno and others, to be relieved from their respective bids and contracts to purchase certain lots in the city of New York mentioned in a judgment of partition and sale of the said lots, rendered by this court in the above entitled action.

The objections set forth in the petition for relief are quite numerous and have all been urged for our consideration, except the fifteenth, by some of the petitioners.

A preliminary motion was pressed by the appellants upon affidavits presented at the General Term, in the first instance, tending to show that some understanding had been made between the judge who heard the motion at Special Term and the different counsel, that in a certain event a reference should be granted to take proof on certain of the objections mentioned in the petition, and that the judge had disregarded this agreement or understanding, and decided the whole motion without any reference and without the hearing of counsel for the petitioners on the points involved in those objections.

The answer to this objection is obvious.   The facts were sufficiently before the court to enable the judge properly to comprehend the points raised by the petitioners.

The appellants have also mistaken the correct method for obtaining relief, if there was, in fact, any mistake or misunderstanding on the part of the judge at Special Term. The fault, if any, ought to have been corrected by an application for a rehearing of the motion at Special Term on affidavits clearly pointing out the mistake or oversight which had occurred.   No such application was made.   It is not the province of the General Term to correct mistakes of the nature complained of, as it is not a question of appellate jurisdiction.

1. The first objection of the petitioners is that the parties had not a title in fee simple, and hence, that they had not a case authorizing a partition of lands.

There was a contract of purchase on the 10th of February,

1869, made by W. M. Smith with the vendor and owner, upon which he paid $20,000, and agreed to pay the further sum of $35,000 on the 10th of May ensuing, when the land was to be conveyed to him, and he was to execute to the vendor mortgages on the premises for the residue of the purchase-money. W. M. Smith, the purchaser, died intestate on the 22d of February, 1869, leaving a widow, Susan P. Smith, and one adult child, the plaintiff in this action, and six minor children. In March following the widow and Mr. Vernon K. Stevenson were appointed administrators of the estate of the deceased. They afterward fulfilled the contract, on the part of their intestate, paying about $7,000 of the sum due in May from their own private funds, and the balance from the estate of the intestate, and with the intention of making an immediate sale of the property and securing the advances so made by themselves, the administrators took an absolute title to themselves in fee simple. It is alleged in the complaint that the title was so taken by the administrators for the benefit of the children of the intestate, subject only to the mortgages and the advances so made by the administrators. The said children, and the widow and administrators, are all made parties to the action, and the administrators make no claim adverse to the said allegations as to the title, and claim only for their said advances as against the title of the children of their intestate. Any claim of an absolute title by the administrators, in themselves, would be a fraud under the conceded facts. It is clear that the fee simple to the lands, and every equitable right or title, was vested in the parties to the action at the time of its commencement. Whether Mrs. Smith and Mr. Stevenson are the plaintiffs or the defendants, on this state of facts is of no consequence. The parties are seized of the whole title and are before the court. The decree or judgment binds them. It appears, also, that the administrators are ready to give their confirmation of the title by deeds to the respective purchasers. Besides, if the title of the heirs be simply an equitable one, there is no difficulty in taking cognizance, as a court of equity, of the case presented by the

Herbert *v*. Smith.

complaint, and relieving the parties from the embarrassments and complications arising from the large investment of the money of the intestate in the purchase of the land, while the title is held as security for a comparatively small sum by the administrators, and decreeing thereon a sale of the premises, in the nature of a partition, and a just and equitable division of the proceeds.

2. The infant defendants, it is said, have not been duly served.

The affidavit to procure the order of publication states that all of them reside at Selma, Alabama, but one of them, Oscar, is temporarily absent at Bellevue High School, Virginia. The order directs service to be made by publication in two newspapers once in each week for six weeks, and the usual direction that copies of the summons and complaint be mailed to each of the said non-residents at their said places of residence.

At the time the decree was taken it appeared that the summons and complaint had been mailed, directed to Oscar at the place in Virginia where he was temporarily residing; but it was not then made to appear that the summons and complaint had been mailed and directed to him at Selma, his residence. This defect was afterward cured by an order of this court on affidavits proving that the summons, &c., was, in fact, mailed and properly directed to Oscar, at Selma, on the same day that the other copies were mailed to him at Virginia, directing that such proof be filed, *nunc pro tunc.* I think the supplemental affidavits show that the summons and complaint were properly posted and directed, and the amendment has cured the defect.

The publication in the two newspapers was not conducted simultaneously during the whole six weeks. In one paper the publication was commenced on the 9th July, and the last insertion was on or before the 14th of August, 1869; and in the other, the first insertion was June 9th; and the last, on or before July 14th, 1869.

The next step taken against the infant non-resident

Herbert v. Smith.

defendants was on September 27th, ensuing, when guardians were appointed by the court by order, on application of the plaintiff.

I am not aware of any decision or any provision of the Code requiring the publication in two newspapers to proceed concurrently. Nor can I perceive any prejudice to the party served by publication by the first and second insertions occurring at different dates. The Code requires the advertisement to be made continuously in each paper for a certain number of weeks, but not concurrently. It requires forty-two days to complete the publication, and the defendants have twenty days after that in which to appear. The first insertion may be on the last day of the first week of the publication, and the last on the first day of the last week. This publication of six weeks may be accomplished between the 10th of July and 14th of August, but the service will not be complete, nevertheless, until forty-two days after the 10th of July, the date of the first insertion in the newspaper last making publication. The publication will be complete, then, on the 21st of August; adding twenty days for the appearance of the non-residents, and they will be in default on the 11th of September. No proceeding was taken against the non-resident defendants until the 27th of September, 1869. The making of affidavits, on which to found further proceedings against them, does them no prejudice, and does not affect the regularity of the plaintiff's action. I consider the service of the summons and complaint, upon the non-resident defendants in this case, to have been regularly made.

3. The third objection mentioned in the petition relates to the service on Oscar P. Smith, and has been already considered.

The fourth objection relates to the age of Oscar, and as a question of fact is fully answered by the opposing affidavits.

The fifth objection refers to the time for the appearance and answer of the infants (who are non-residents), and has also been fully examined above.

The sixth objection relates to questions of fact, and these

Herbert v. Smith.

are fully and satisfactorily explained by the opposing affidavits.

The seventh objection questions the suitableness of the guardians *ad litem* appointed by the court, and raised certain questions of fact as to the attention of the guardians to the interests of the infants whom they represented, the money advanced by the administrators, and the amount of the estate of their intestate, &c.   These are not questions concerning the jurisdiction of the court or the regularity of the sale, and are not grounds upon which the purchasers can be relieved. They are fully explained, also, by the opposing affidavits.

The eighth objection states that the bonds of the guardians have not been made, approved or filed.   It is wholly without any foundation in fact, as appears from the record and affidavit read in opposition to the motion.

The ninth objection complains that the referee exacted from purchasers less favorable terms than the decree provided, not following the terms of the decree, whereby the rights of the infants were prejudiced, as the purchasers believe that the more favorable terms mentioned in the decree would have enhanced the price at the partition sale.   The referee reported the sale to the court, and it was duly confirmed.

The affidavits show that it was not in fact prejudicial to the infants, but a desirable proceeding for their interest.   I think it was not a question with which the purchasers have any concern, it being one of regularity of practice only, and not of jurisdiction, nor one upon which the court would have intervened after the sale, on the application of the parties.

It was an irregularity capable of amendment, and the judge, on the hearing of the petition herein, directed the decree to be modified so as to conform to the terms of sale, *nunc pro tunc*, as of a date anterior to the sale.   Whatever ground for the objection may have existed, it is cured by the amendment.

The tenth objection is a claim that the sale was by the referee adjourned to a day in February, 1872, and without any advertisement of a sale for that day, or any adjournment in February, the sale was actually made in March.   The affidavits of the parties who resist the motion prove that on the

confirmation of a sale of a portion of the premises, on the 28th November, 1872, the court by an order directed the sale of the other lots "to stand over" to a future time. The time in February mentioned by the referee in his report was nullified by the order of the court. The opposing affidavit states that the sale in March was advertised for six weeks, pursuant to the directions of the decree. I find it mentioned on the points of counsel, that posters notifying the public of the sale were not put up in season; that they were posted only forty days prior to the sale. I find nothing in the moving papers of any such defect, and on reference to the decree, there is no direction for posters to be found. There appears to be no ground for this objection.

The eleventh objection suggests that there are creditors of the intestate; that the administrators have not advertised for claims, and the real estate of the intestate is liable to creditors. The opposing affidavit states that more than three years have elapsed since the appointment of the administrators, and no creditor has been heard of, and no petition or claim has been made. The petitioners mention no particular creditor, but make a general allegation that the estate was largely indebted. The veracity of the statement is sustained by the liability of the intestate upon the contract for the purchase of the premises in question. It is insufficient, however, to sustain the objection.

The presumption is adverse to the existence of such debts. (*Bogert* v. *Bogert,* 45 Barb., 121.) This authority is also in point as to some of the other objections. The charge is too indefinite to disturb the validity of the sale.

The twelfth objection states that a succession tax is due to the United States, which is a lien.

The affidavit on behalf of the parties states that the intestate was a resident of Alabama, where he had a large estate; that there is no such tax capable of being ascertained in this State until the proceeds of the sale of the said premises has been realized; that there is no other property of the deceased in this State.

The thirteenth objection is that there are mortgages unsatisfied, and the referee was not prepared to satisfy them at the time mentioned for delivery of the deed. This position is met by affidavit that the amount to be paid by the purchasers was sufficient to extinguish the mortgages, and the holders were at hand and ready to receive the money and deliver satisfaction thereof. The referee also so certifies.

Fourteenth objection. That there is a defect in the chain of title; that Bancel was the owner in 1825, and mortgaged to Bonchard in trust for infants; that Bouchard foreclosed in 1828, and bought in the premises for half the mortgage debt, taking title in his individual right; that he sold to Williams in 1835, in his individual right, for more than double the price paid; this transaction is suggested to be a fraud upon his *cestui que trust*, and that their release is necessary; that the deed from Bouchard to Williams is a nullity.

It is stated in opposition to this point, by affidavit, that no claim on the part of the *cestui que* trust has ever been advanced, now a period of more than forty years since Bouchard acquired the title, and that there is a valid deed from him to Williams, dated in January, 1835, duly recorded, in consideration of $11,000.

I think the claim of the *cestui que trust*, if any, has been barred by lapse of time. But there is no evidence offered that Bouchard did not well and properly account to those for whom he acted as trustee, and the presumption is to the contrary. The title has been since transferred eight or nine times, and there appears nothing against it but a vague and indefinite suggestion that the deed of Bouchard is a nullity.

Fifteenth and last objection is that the old Bloomingdale road is a portion of the premises in question, and the petitioners are of the opinion that the title to that road is vested in the corporation of the city of New York.

The respondents allege that the lot purcased by Mr. Eno is the only one affected by this objection; that the fee of this gore reverted to the owners of the adjoining land under § 3, of chap. 697 of the Session Laws of 1867.

The petitioners have not argued this objection, and it appears to have no foundation.

There are several mis-recitals of dates in the proceedings; several matters have been amended since the decree, *nunc pro tunc;* and there is no doubt that the practice was conducted in a careless style; but I find no objection that has not been cured, or that has a sufficient foundation to defeat the contract of the purchasers.

The order should be affirmed, with costs.